IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Michael E. Hegarty**

Civil Action No. 14-cv-03259-MEH

KENT WILSON,

    Plaintiff,

v.

HUMANA HEALTH PLAN, INC.,

    Defendant.

---

### ORDER ON MOTION TO DISMISS
---

Before the Court is Defendant's Motion to Dismiss [filed January 9, 2015; docket #18]. The motion is fully briefed, and the Court heard oral argument on February 23, 2015. For the reasons that follow, I **deny** the motion.

### BACKGROUND

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In November 2013, Plaintiff suffered a stricture of the common bile duct which his medical providers believed was highly symptomatic of cancer. (Docket #1, ¶ 6.) Plaintiff's medical providers advised he immediately undergo placement of a temporary stent in his bile duct, which would last, at most, 90 days before it clogged. (*Id*. at ¶¶ 6-7.) On December 23, 2014, Plaintiff purchased a health insurance plan underwritten by Defendant ("Policy") which guaranteed coverage

effective January 1, 2014. (*Id.* at ¶ 8.) On January 15, 2014, Plaintiff was invited to attend a diagnostic pancreatic clinic at the University of Colorado Hospital ("UCH") on January 28, 2014 at which a team of doctors and interns would diagnose his condition. (*Id.* at ¶ 9.)

On January 24, 2014, Plaintiff contacted Defendant regarding his invitation to the UCH clinic and inquired if the treatment was covered by the Policy. (*Id.* at ¶ 10.) Defendant's representative falsely stated that Plaintiff's health insurance coverage did not begin until March 1, 2014. (*Id.* at ¶ 11.) Plaintiff cancelled his attendance at the UCH clinic and filed an internal appeal with Defendant regarding his coverage start date. (*Id.* at ¶ 12.) Meanwhile, Plaintiff was reaccepted into the UCH clinic and scheduled for an evaluation on February 11, 2014. (*Id.* at ¶ 13.) On February 10, 2014, Defendant informed Plaintiff that his insurance coverage under the Policy was in fact effective January 1, 2014. (*Id.* at ¶ 14.) Plaintiff inquired whether Defendant would cover the UCH clinic scheduled for the next day, and Defendant replied that the UCH clinic was out of network, and it would not expedite a request for pre-authorization and out-of-network coverage. (*Id.* at ¶15.)

Plaintiff decided to keep the scheduled UCH clinic visit until Defendant could review the out-of-network coverage; otherwise, he would pay for the service out of pocket. (*Id.* at ¶ 16.) At the UCH clinic, the doctors recommended that Plaintiff undergo a pancreatoduodenectomy, commonly known as a Whipple procedure, as soon as possible. (*Id.* at ¶ 17.) A surgery date was set at UCH for March 5, 2014. (*Id.*)

On February 26, 2014, Defendant denied coverage for the UCH clinic on grounds that it was out of network and lacked prior authorization. (*Id.* at ¶ 18.) Plaintiff canceled the UCH surgery date

and located an in-network provider to perform the Whipple procedure. (*Id*. at ¶ 19.) Plaintiff underwent the Whipple procedure on March 11, 2014 with an in-network provider. (*Id*.) He was diagnosed with Stage III pancreatic cancer. (*Id*.) Plaintiff alleges that he would have been diagnosed and treated earlier if Defendant had not improperly denied his coverage on January 24, 2014. (*Id*. at ¶ 20.)

Defendant filed the present Motion to Dismiss on January 9, 2015 on grounds that the Complaint fails to state plausible claims for relief under Fed. R. Civ. P. 12(b)(6). Plaintiff's response to the motion includes a request to file an amended complaint if I grant the motion.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## **DISCUSSION**

Plaintiff's complaint brings claims for breach of contract, bad faith breach of contract, and violation of Colo. Rev. Stat. § 10-3-1115. I will address Defendant's Rule 12(b)(6) defenses as they pertain to each claim.

**I.     Breach of Contract**

Plaintiff contends the contract for health insurance between him and the Defendant was breached based on the Defendant's initial decision (albeit short-lived) denying coverage, as well as Defendant's refusal to expedite his request for preauthorization of his out-of-network provider request.[1]  Under Colorado law, to prove a breach of contract claim, a plaintiff must establish the following elements: (1) the existence of a contract; (2) plaintiff's performance or some justification

---

[1] This claim is somewhat vague.  In the First Claim for Relief (Breach of Contract), the only specific breach Plaintiff alleges relates to the coverage onset date.  However, in the numbered factual allegations, Plaintiff also alleges Defendant "would not expedite a request for pre-authorization and out-of-network coverage."  (Docket #1 at ¶ 15.)  Plaintiff references this alleged refusal to expedite in his Second Claim for Relief (Bad Faith Breach of Insurance Contract).

for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

    A.    <u>Failure to Perform</u>

Defendant argues Plaintiff has failed to plausibly allege the third element of a breach of contract claim because there was no failure to perform under the Policy. Defendant contends it was within its contractual right to deny out-of-network treatment, and that it subsequently provided in-network treatment. Regarding the effective coverage date, Defendant reviewed Plaintiff's appeal within the terms of the Policy and reversed its January 24, 2014 decision, making coverage effective January 1, 2014 rather than March 1, 2014. According to Defendant, because it complied with its internal appeals process and ultimately provided full coverage for Plaintiff's treatment, Plaintiff has failed to plead a breach of contract claim. In short, the Policy requires exhaustion of the internal appeals process before the filing of a lawsuit, and since Plaintiff did engage in the appeals process and received a reversal of the initial decision, he has no legal claim for breach of contract. Defendant further asserts that public policy weighs in favor of finding no breach, arguing that "[a] ruling that an insurer breaches its contract with an insured, even when it reverses that decision within a few days, is contrary to the public policy of encouraging administrative resolution of disputes without resort to litigation." (Motion to Dismiss, Docket #18, p. 8.)

Under Colorado law, the interpretation of an insurance policy is a matter of law for the Court. *Cyprus Amaz Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). In interpreting the terms of a contract, the agreement must be read in its entirety. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) (citing *Pepcol Mfg. Co. v. Denver Union*

*Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). "In the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms." *Farmers Ins. Exch. v. Dotson*, 913 P.2d 27, 30 (Colo. 1996).

I believe Defendant's argument incorrectly focuses on one aspect of the contract to the exclusion of the specific breach alleged by Plaintiff. It is true that the contract contained a process by which an insured could achieve review of an unfavorable decision. It is also true that the Plaintiff engaged in this contractual appeals process and achieved a reversal. However, Plaintiff's breach of contract claim does not assert a failure of the appeals process. Plaintiff asserts that the contract required the provision of health care beginning January 1, 2014, and Defendant's failure to honor the insurance contract beginning January 24, 2014 was a breach of the agreement. I agree. This claim for breach accrued on January 24, 2014, before Plaintiff even engaged in the internal appeals process. Had he filed a lawsuit at that time, there is no reason why a claim for breach could not have proceeded despite the existence of an internal appeals process, and Defendant points to no authority to the contrary. What Defendant does argue is that "[t]he Policy . . . contains an exhaustion of remedies provision which allows an insured to pursue other legal remedies only '[a]fter exhaustion of remedies.'" (Docket #18 at p. 4 (citing docket #18-2, p. 59)).

Plaintiff received an "adverse benefit determination" under the Policy on January 24, 2014 when he was (incorrectly) informed that he was not eligible for benefits until March 1, 2014. The Policy states that an insured "must appeal an adverse benefit determination within 180 days . . . after receiving written notice of the denial[.]" (Docket #18-2, p. 58.) This clause simply provides a deadline for filing an internal appeal after receipt of an adverse benefit decision; it does not require

6

such an appeal prior to filing a lawsuit. The Policy also states, "[a]fter exhaustion of remedies, [the insured] may pursue any other legal remedies available." (*Id*. at p. 60.) Notably, the Policy does not say that the insured *must* exhaust remedies before pursing other legal remedies. The plain language of the Policy makes the internal appeals process elective rather than mandatory with regard to filing a lawsuit, particularly in light of the principle that I should resolve any ambiguities against the drafter, or, in this instance, Defendant. *See Cyprus*, 74 P.3d at 299.[2]

Defendant's reliance on *Evans v. Kirke-Van Ordel*, 122 F. App'x 947 (10th Cir. 2004) is misplaced. First, *Evans* was not a breach of contract case. Rather, it was an exhaustion of administrative remedies case. There, the Tenth Circuit held that an employee's claim for benefits under her long term disability plan was barred by her failure to comply with the plan's provision *mandating* exhaustion of all claim review procedures *before* recourse to legal action. *Id*. at 950-52. The insurance policy in that case included a provision stating that the insured "*must* file a complete and timely claim and exhaust all claim review procedures *before* filing a suit in a court or taking other legal action to obtain benefits under the plan." *Id*. at 948 (emphasis added.) The issue in *Evans* was whether the insured had exhausted administrative remedies, or if an exception to the exhaustion requirement applied to her situation.

Unlike *Evans*, no contractual provision in the Policy in this case required exhaustion of

---

[2] I note that Colorado case law views the word "may" as having a different meaning than "must" or "shall." *See Cagle v. Mathers Family Trust*, 295 P.3d 460, 467 (Colo. 2013) ("The phrase 'may sue' is permissive, not mandatory ...."). In *Grombone v. Krekel*, 754 P.3d 777 (Colo. App. 1988), the court determined that in a contract, "use of the word 'may' implies a permissive remedy, and does not bar the plaintiffs from seeking other remedies available to them, such as [a legal] action." *Id*. at 780.

7

administrative remedies as a prerequisite to filing a suit. Thus, although Plaintiff engaged in the claim review procedures within the Policy, he was not required to do so before seeking legal relief. Plaintiff's decision to appeal the denial of benefits does not preclude him from filing a lawsuit for the alleged January 24, 2014 breach of contract. Defendant's remedying its breach through the internal appeals process may significantly reduce any damages (or, indeed, may eliminate damages altogether), but it does not establish as a matter of law that Defendant did not breach the Policy by informing Plaintiff that he was not covered until March 1, 2014. *Cf. Godson v. America Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004) ("[T]he fact that an insurer eventually pays an insured's claims will not prevent the insured from filing suit against the insurer based on its conduct prior to the time of payment.").

Finally, Defendant addresses Plaintiff's claim for breach of contract based on Defendant's denial of preauthorization out-of-network treatment, stating that the contract permitted it to make such a decision. First, I do not read the First Claim for breach of contract as including a claim based on the out-of-network issue. As I read the Complaint, this claim is contained only within the Second Claim for relief for bad faith and, even then, deals only with the refusal to expedite review of Plaintiff's request for preauthorization. Therefore, I will deal with this argument in my analysis of the motion to dismiss the Second Claim.

    B.    <u>Damages</u>

Defendant contends the Complaint fails to sufficiently allege that the breach of contract resulted in damages. I agree the Complaint is vague as to any specific damage resulting from a delay in coverage. At oral argument, Plaintiff's counsel stated he would not be able to plead with

specificity that the delay in fact cost Plaintiff a chance of survival, at least without some discovery. However, Plaintiff's counsel stated that, based on his investigation of the claim, if granted leave to amend, he could plead an allegation regarding the emotional distress caused by the delay in coverage. In light of Plaintiff's counsel's statements at oral argument, I believe that Plaintiff should be given leave to amend the complaint to supplement the damages allegations to include emotional distress. With that amended pleading, as discussed at the oral argument, I find Plaintiff has sufficiently pleaded a breach of contract claim and I deny the motion to dismiss count one. Of course, Plaintiff's burden on this issue will be significantly different at the summary judgment stage, but for purposes of pleading, Plaintiff will have met his burden with a proper allegation of emotional damage.

## II.  Bad Faith

In Colorado, to state a first-party bad faith claim, the insured must establish that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim. *Godson*, 89 P.3d at 415. Here, the very first page of the Policy[3] clearly states that the benefits take effect on January 1, 2014. (Docket # 18-1, p. 2.) Defendant offered no explanation for mis-informing Plaintiff that his benefits did not take effect until March 1, 2014. Defendant urges the Court to consider the "total timeframe at issue in this case" and that it resolved Plaintiff's appeal before the deadline setforth in the Policy. (Docket #25, p. 7.) While those defenses might be relevant to Defendant's ultimate financial liability, as a

---

[3] At oral argument, defense counsel conceded that an analysis of the contract provisions does not convert Defendant's motion to a motion for summary judgment.

matter of law Plaintiff has properly alleged that Defendant's denial on January 24, 2015 was unreasonable and in reckless disregard of the insured's rights. *See Goodson*, 39 P.3d at 414 ("The basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability.")

In addition, the Policy specifically contains a provision permitting the insured to request an expedited internal review. *Id.* at 57-58. Again, although Defendant may have legitimate or even dispositive defenses to this claim at the summary judgment stage, for purposes of pleading, Plaintiff has properly alleged that Defendant's denial of the request to expedite was unreasonable and in reckless disregard of the insured's rights.

Therefore, I conclude Plaintiff has plausibly alleged that Defendant acted unreasonably, and that Defendant's error was in reckless disregard of Plaintiff's contract rights.

### III.   Colo. Rev. Stat. § 10-3-1115

"A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." § 10–3–1115(1)(a). An insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." § 10–3–1115(2). Here, Plaintiff alleges that Defendant offered no reasonable basis for initially delaying coverage until March 1, 2014. Thus, Plaintiff has plausibly alleged a violation of § 10-3-1115.

### CONCLUSION

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss [filed January 9, 2015; docket #18] as set forth herein. Plaintiff shall file an amended complaint on or before **March 5, 2015**.

DATED this 25th day of February, 2015, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge